*Lewis v. Bedford City School District, et al.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **KHALISHA A. LEWIS,** ) | CASE NO.: |
| ) | |
| Plaintiff, ) | JUDGE: |
| ) | |
| v. ) | |
| ) | |
| **BEDFORD CITY SCHOOL DISTRICT;** ) | |
| **BOARD OF EDUCATION** ) | |
| ) | |
| **DR. CASSANDRA J. JOHNSON,** ) | **COMPLAINT FOR VIOLATION** |
| Superintendent of Bedford City School ) | **OF CIVIL RIGHTS** |
| District, (Individual and Official Capacity), ) | *(42 U.S.C. §§ 1983,1988; Fourteenth* |
| ) | *Amendment Procedural Due Process;* |
| **ANTHONY A. AKINS,** ) | *First Amendment; Equal Protection;* |
| Board President of the Bedford City ) | Liberty Interest Deprivation; Defamation; |
| School Board of Education ) | Breach of Contract; Stored Communications |
| (Individual and Official Capacity), ) | Action, 18 U.S.C. § 2701 (on information |
| ) | and belief)) |
| **EVA BOYINGTON,** ) | |
| Members of the Bedford City School ) | |
| District Board of Education ) | ***JURY TRIAL DEMANDED*** |
| (Individual and Official Capacity), ) | |
| ) | |
| **CHRIS CALLENDER,** ) | |
| Members of the Bedford City School ) | |
| District Board of Education ) | |
| (Individual and Official Capacity), ) | |
| ) | |
| **ANGELIC CARTER,** ) | |
| Members of the Bedford City School ) | |
| District Board of Education ) | |
| (Individual and Official Capacity), ) | |
| ) | |
| **MONTEZ MORTON,** ) | |
| Members of the Bedford City School ) | |
| District Board of Education ) | |
| (Individual and Official Capacity), ) | |
| **)** | |
| **PAUL WORSENCROFT**, ) | |
| Employee of the Bedford City School ) | |

*Lewis v. Bedford City School District, et al.*

District (Individual and Official Capacity),  )
                                                       )
                   Defendants.               )

## PRELIMINARY STATEMENT

This action arises from the Bedford City School District's constitutionally deficient removal, prolonged isolation, and attempted coerced release of Khalisha A. Lewis, a licensed Ohio educator and eight-year veteran Head Principal of Bedford High School, who was stripped of her position without adequate pre-deprivation process, subjected to an indefinite administrative leave lasting more than six months, and then presented with a Last Chance Agreement requiring her to waive all federal and state civil rights claims in exchange for the right to return to the job she never should have lost.

The District's constitutional failures are not contested matters. They are established in the sequence of events: Ms. Lewis was sent home on September 29, 2025, received a leave notice four hours later, and was never provided a meaningful pre-deprivation hearing consistent with the requirements of *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). The allegations against her shifted after the fact. An investigation of sweeping scope, alcohol intoxication, neglect of duty, student discipline, timekeeping, and insubordination, was conducted over five months without a defined timeline or resolution date. And when it concluded, the District did not terminate Ms. Lewis. It offered her a Last Chance Agreement, an instrument that requires five years of random drug and alcohol testing, ten days' unpaid suspension, a lifetime probationary framework, a broad civil rights release, and the surrender of her rights under Ohio law. That offer is itself evidence of the constitutional infirmity of the underlying allegations.

The investigative report's most serious allegation, that Ms. Lewis was observed drinking from a cognac bottle at a school event, rests on the account of a single, anonymous witness who admittedly

2

*Lewis v. Bedford City School District, et al.*

failed to report the conduct at the time because Ms. Lewis is his employment "superior." No alcohol test was ever administered. Ms. Lewis denied each allegation. The District's own investigator acknowledged the absence of corroborating test results. Yet the report recommended termination, while the District, rather than proceeding to termination, opted for a negotiated exit that forecloses all legal remedies. That inconsistency is not a coincidence. It is the template.

Ms. Lewis's experience is not isolated. Within the same six-month period, September 2025 through March 2026, Superintendent Johnson placed two additional senior administrators from the same building on leave using the identical constitutional template. The pattern is documented. Municipal liability is independently established. And each day of ongoing deprivation without adequate process is a continuing constitutional injury.

## I. JURISDICTION AND VENUE

1. This action arises under the First Amendment and Fourteenth Amendment to the United States Constitution; 42 U.S.C. §§ 1983 and 1988; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, including claims arising under Ohio contract law and any applicable Ohio statutory provisions.

3. Venue is proper in the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in Cuyahoga County, Ohio, and all Defendants reside and/or conduct business within this judicial district.

## II. PARTIES

### A. Plaintiff

4. Plaintiff Khalisha A. Lewis is an individual residing in Mayfield Heights, Cuyahoga County, Ohio. At all times relevant to this Complaint, Ms. Lewis was employed by the Bedford City School District as Head Principal of Bedford High School, a position she held for

*Lewis v. Bedford City School District, et al.*

approximately eight years with an unblemished disciplinary record and uniformly positive performance evaluations. She brings this action in her individual capacity.

**B. Defendants**

5.  Defendant Bedford City School District (hereinafter "the District" or "BCSD") is a public school district and governmental entity organized under the laws of the State of Ohio, located at 3 Hemisphere Way, Bedford, Ohio 44146. The District is a "person" subject to suit under 42 U.S.C. § 1983 as a local government entity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

6.  Defendant Dr. Cassandra J. Johnson is and was at all relevant times the Superintendent of the Bedford City School District. She is sued in both her individual and official capacities. At all relevant times, Dr. Johnson acted under color of state law. As Superintendent, she is and was the final policymaking authority for employment decisions within the District. Her personal participation in the adverse acts described herein renders qualified immunity unavailable.

7.  Defendant Anthony A. Akins is and was at all relevant times the President of the Bedford City School District Board of Education. He is sued in both his individual and official capacities. At all relevant times, Mr. Akins acted under color of state law.

8.  Defendants Eva Boyington, Chris Callender, Angelic Carter, and Montez Morton (hereinafter "Members") are and were at all relevant times Members of the Bedford City School District Board of Education. They are sued in both their individual and official capacities. Board members who had knowledge of a pattern of constitutional violations and failed to take corrective action bear individual § 1983 liability for deliberate indifference constituting tacit authorization.

*Lewis v. Bedford City School District, et al.*

## III. FACTUAL BACKGROUND

**A. Ms. Lewis's Employment and Institutional Role**

9.  Ms. Lewis joined the Bedford City School District approximately eight years prior to the events described herein and held the position of Head Principal at Bedford High School through the date of her placement on administrative leave on September 29, 2025. Her employment history is characterized by uniformly positive performance evaluations and an unblemished disciplinary record.

10. As Head Principal, Ms. Lewis was the senior building-level administrator at Bedford High School, responsible for overseeing all instructional programming, student discipline, staff supervision, community relations, and school safety operations. Her direct supervisor was Superintendent Dr. Cassandra J. Johnson.

11. Ms. Lewis had never received prior discipline from the District. She had never been the subject of a formal complaint, a written reprimand, or any adverse employment action prior to September 29, 2025. Her annual salary was $126,000. Her contract was in effect at the time of her removal.

**B. The September 29, 2025 Removal — No Prior Notice, No Adequate Hearing, No Process**

12. On or about September 29, 2025, Ms. Lewis was directed to leave the building. Approximately four hours after her departure, she received written notice that she was being placed on paid administrative leave. She was not provided a meaningful pre-deprivation hearing, was not given written notice of the specific allegations against her before the adverse action was imposed and was not afforded a genuine opportunity to respond to the charges that would ultimately be asserted against her.

*Lewis v. Bedford City School District, et al.*

13. The allegations communicated to Ms. Lewis before her removal were not consistent with the allegations subsequently documented in the District's investigative report. As Ms. Lewis later confirmed, "when I got my letter, what we discussed changed." This shifting of allegations after the fact is a textbook procedural due process deficiency and independently actionable under Loudermill and its progeny.

14. The formal investigative process did not begin in earnest until months after Ms. Lewis's removal. An outside investigator conducted a formal interview with Ms. Lewis on January 30, 2026, more than four months after her placement on leave. No timeline for completion was ever communicated. As Ms. Lewis confirmed: "No timeframe."

**C. The Scope and Deficiencies of the Investigative Report**

15. The District's investigative report addressed four categories of allegations against Ms. Lewis: (1) intoxication on school grounds and at school events; (2) neglect of duty in connection with an alleged threat by a parent at the Homecoming Dance on September 20, 2025; (3) improper student discipline protocols; and (4) insubordination and dishonesty in connection with timekeeping.

   a. *Allegation 1* — Intoxication: The investigative report acknowledges that no alcohol test was ever administered to Ms. Lewis. Ms. Lewis denied each allegation of intoxication. The report's most serious finding, that one security officer allegedly witnessed Ms. Lewis drinking from a cognac bottle, rests on the uncorroborated account of a single witness who admittedly failed to report the conduct at the time because Ms. Lewis is his employment "superior." The report's own framing acknowledges: "while there is no alcohol testing to confirm that Ms. Lewis was under the influence."

*Lewis v. Bedford City School District, et al.*

16. The absence of any alcohol or drug testing is not merely a gap in the evidence. It is a constitutionally significant procedural failure. Ms. Lewis was on school grounds and at school events on multiple occasions during the period in question. The District had both the ability and the administrative authority to test her. It did not. The decision not to test, and then to recommend termination based on unverified witness accounts, is not a neutral investigative outcome. It is an evidentiary deficiency that undermines the reliability and proportionality of the District's response.

   c. *Allegation 2* — Homecoming Dance Threat: The District's own records confirm that Ms. Lewis's direct supervisor, Dr. Johnson, was independently aware of the circumstances at the Homecoming Dance on September 20, 2025. Documentary evidence in Plaintiff's possession establishes that Ms. Lewis communicated directly with Dr. Johnson about the events of that evening, including the parent disturbance and police response, and that Dr. Johnson was informed in real time. The suggestion that Ms. Lewis "neglected her duties" at the Homecoming Dance is materially undermined by her own direct communications with her supervisor that evening, communications the District's investigator did not account for in the report.

   c. *Allegations 3 and 4* — Student Discipline and Timekeeping: These allegations were not the basis for the District's initial decision to remove Ms. Lewis. They are supplemental allegations developed after the fact, during an extended investigation that expanded well beyond the scope of the circumstances that precipitated Ms. Lewis's removal. Their inclusion in the investigative report and in the proposed Last Chance Agreement reflects a pattern of post-hoc justification rather than the good-faith application of disciplinary policy.

*Lewis v. Bedford City School District, et al.*

**D. The Proposed Last Chance Agreement — A Coercive and Legally Defective Instrument**

17. On or about March 2026, the District, through its counsel, transmitted to Plaintiff's counsel a proposed Last Chance Agreement and Release (hereinafter "LCA"). The LCA requires, among other terms: (a) a comprehensive substance abuse evaluation within 30 days; (b) authorization for disclosure of evaluation results to District HR personnel; (c) five years of random drug and alcohol testing at the District's sole discretion; (d) a ten-day unpaid suspension satisfied through sick and personal leave conversion; (e) Ms. Lewis's agreement to waive any and all rights under her employment contract and Ohio Revised Code § 3319.02; and (f) an extraordinarily broad release of all federal and state civil rights claims, including claims under Title VII, the Equal Pay Act, the Family and Medical Leave Act, and the Americans with Disabilities Act, as well as all claims arising from the events of September 2025.

18. The LCA's release provision is facially overbroad and legally defective. It purports to extinguish all claims arising from or related to the events of September 2025 in exchange for the right to return to a position Ms. Lewis never should have lost. It requires Ms. Lewis to waive statutory rights that cannot be waived under these circumstances, including the right to file EEOC charges in connection with any underlying discriminatory conduct, and then purports to deny her monetary relief even from administrative proceedings it acknowledges she retains the technical right to pursue.

19. The LCA's five-year random testing regime is untethered to any substantiated finding of alcohol use. No positive test result was obtained. No clinical assessment confirming a substance abuse condition was conducted. The imposition of a five-year testing requirement, at the District's sole discretion, with any positive result above 0.0 constituting grounds for

termination, constitutes ongoing punitive surveillance unsupported by the evidence produced in the District's own investigation.

20. The transmission of the LCA constitutes an implicit acknowledgment that the District cannot sustain a termination proceeding on the evidentiary record assembled. A district with adequate substantiating evidence does not offer a last chance. It terminates. The LCA itself is evidence of the constitutional and evidentiary deficiency of the underlying adverse action.

21. Ms. Lewis's employment contract is subject to a non-renewal deadline of June 1, 2026. The District's own LCA expressly acknowledges this deadline, representing that the Board "will not initiate non-renewal proceedings" if Ms. Lewis executes the agreement before that date.

**E. The Contract Non-Renewal Deadline — Structural Coercion**

22. The use of an imminent contractual deadline as leverage to secure Ms. Lewis's execution of a broad civil rights release is not a neutral administrative outcome. It is structural coercion. The District placed Ms. Lewis on leave in September 2025, conducted an investigation spanning more than five months without resolution, and then transmitted a proposed release agreement as the contract non-renewal deadline approached. The timing is not coincidental. It is the mechanism through which the coercion operates.

23. Separately, the text message communications between Ms. Lewis and Dr. Johnson, which are in the possession of Plaintiff's counsel and are being preserved for litigation, include Dr. Johnson's direct communication to Ms. Lewis on the morning of September 21, 2025, the day after the Homecoming Dance. In those communications, Dr. Johnson was briefed by Ms. Lewis on the events of the preceding evening, expressed awareness of the parent disturbance, and did not direct any disciplinary action against Ms. Lewis. These communications are inconsistent

9

with the subsequent narrative that Ms. Lewis's conduct at the Homecoming Dance constituted a neglect of duty requiring her removal from the building eight days later.

**F. The Documented Institutional Pattern — Monell Foundation**

24. Ms. Lewis's removal was not an isolated act. Within the six-month period of September 2025 through March 2026, Superintendent Johnson placed at least two additional senior administrators from Bedford High School on leave using the identical constitutional template: no prior written notice of specific charges, no pre-deprivation hearing, no disclosure of the employer's evidence, no opportunity to respond before the adverse action was imposed, and no defined investigative timeline.

25. Mr. Reginald C. Walker, Assistant Principal and CTE Coordinator at Bedford High School, was placed on administrative leave on October 3, 2025, four days after Ms. Lewis. The District's independent investigative report in the Walker matter found that the most serious allegation against him, intoxication, was expressly unsubstantiated. The investigator recommended a three-day suspension. The District publicly designated his leave as "severe misconduct" before a single finding of fact was made.

26. Dr. JaTina N. Threat, the District's Executive Director of Human Resources, was placed on administrative leave on March 6, 2026, while attending a professional conference, based on an off-duty personal social media comment on a matter of national political significance bearing no relationship to her official duties. Documentary evidence confirms that Superintendent Johnson directed the District's IT Director to access Dr. Threat's District email account without authorization during the period of her administrative leave.

27. All three administrators experienced the same constitutional template: sudden removal by Superintendent Johnson, no pre-deprivation process, no written notice before adverse action,

and no evidence-supported basis for the severity of treatment. Their accounts are independently corroborated. This is not a pattern constructed by counsel. It is a pattern documented in the District's own records, investigative findings, and institutional conduct.

28. The Board of Education, Defendants Akins, Callender, Boyington, Carter, and Morton, had notice of this pattern beginning with Ms. Lewis's placement on leave in September 2025, and had ongoing notice throughout the period during which all three administrators remained on leave without adequate process. The Board took no corrective action. Each day of deliberate indifference constitutes a separate and independent constitutional violation.

## IV. CLAIMS FOR RELIEF

### COUNT I
*Procedural Due Process — Fourteenth Amendment / 42 U.S.C. § 1983*
*Against All Defendants*

29. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

30. At all relevant times, Ms. Lewis possessed a constitutionally protected property interest in her continued employment with the Bedford City School District. As a contract public employee with a legitimate expectation of continued employment established by the nature and duration of her position and the terms of her contract, Ms. Lewis is entitled to the procedural protections recognized in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

31. The Loudermill procedural floor requires: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to respond before the adverse action is imposed.

11

*Lewis v. Bedford City School District, et al.*

32. Defendants violated Ms. Lewis's Loudermill rights in the following independently actionable respects: (a) written notice of specific charges was not provided before her removal; (b) the allegations communicated to Ms. Lewis prior to removal shifted materially from those subsequently documented in the investigative record; (c) no explanation of the employer's evidence was provided before or contemporaneously with the adverse action; and (d) no constitutionally adequate process has been provided to date, with the investigation extending more than six months without a defined timeline, resolution date, or substantiated finding sufficient to support the severity of the action taken.

33. The ongoing nature of this deprivation, with no adequate process offered, and each day of unjustified leave constituting an independent constitutional harm, supports both continuing violation damages and equitable relief, including reinstatement.

34. Superintendent Johnson personally authorized and directed the adverse action. Qualified immunity is unavailable because the right to pre-deprivation process under Loudermill was clearly established at the time of the violation. Punitive damages are warranted under *Smith v. Wade,* 461 U.S. 30 (1983).

## COUNT II
### *Liberty Interest Deprivation — Reputational Harm*
*Against Defendant Johnson and the Bedford City School District*

35. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

36. A public employee possesses a constitutionally protected liberty interest in her professional reputation and standing. *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972). Where a governmental employer makes stigmatizing statements in connection with an adverse employment action, statements that are publicly disseminated, that the employee denies, and that impair the employee's ability to pursue other employment opportunities — the employer

12

*Lewis v. Bedford City School District, et al.*

must afford the employee a name-clearing hearing. *Codd v. Velger*, 429 U.S. 624, 627 (1977). In the Sixth Circuit, this liberty interest is triggered where: (1) stigmatizing statements are made in conjunction with the adverse employment action; (2) the statements are made public; (3) the employee claims the statements are false; and (4) the employer's circulation of the information is voluntary.

37. The District's investigative report characterized the allegations against Ms. Lewis in terms that associate her professional conduct with alcohol intoxication, neglect of student and staff safety, and dishonesty. These characterizations were made and circulated in a professional and governmental context without adequate factual support, and have been disseminated publicly within the District and to counsel, impairing Ms. Lewis's professional standing in a community in which she holds Ohio educator licensure and has built an eight-year career. Ms. Lewis has at all times denied the allegations. All elements of the Sixth Circuit's stigma-plus standard are satisfied: the stigmatizing statements were made in connection with the adverse action, circulated voluntarily by the employer, denied by Ms. Lewis as false, and have been made public within the relevant professional community.

38. No name-clearing hearing has been offered. No retraction or correction of the investigative report's characterizations has been issued. The stigma persists to the date of filing and is compounded by the proposed LCA, which would require Ms. Lewis to accept these characterizations, and waive all claims arising from them, as a condition of returning to a position she never should have lost.

39. As a direct and proximate result of this deprivation, Ms. Lewis has suffered harm to her professional reputation, impairment of her ability to pursue comparable employment in the

13

*Lewis v. Bedford City School District, et al.*

field of education, and ongoing reputational injury in the community in which she holds professional licensure.

## COUNT III
### *Monell Municipal Liability — Policy, Custom, and Practice*
*Against Defendant Bedford City School District and Individual Board Defendants*

40. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

41. Municipal liability under 42 U.S.C. § 1983 attaches when a plaintiff demonstrates that a constitutional violation resulted from (1) an official policy or custom of the municipality; (2) a decision by a person with final policymaking authority; or (3) deliberate indifference to a known pattern of constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489 U.S. 378 (1989). A single decision by a municipal official with final policymaking authority constitutes municipal policy and triggers liability without the need to prove a broader custom or pattern. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986).

42. At all relevant times, Superintendent Johnson was the final policymaking authority for employment decisions within the District. Her decisions constitute the official policy of the District, independently subjecting it to municipal liability under Monell.

43. Independently, the constitutional violations alleged herein were not aberrational. Within the six-month period of September 2025 through March 2026, the District applied the same procedurally deficient adverse action template to at least three senior administrators, Ms. Lewis, Mr. Walker, and Dr. Threat, without pre-deprivation notice, without disclosure of specific charges, without an opportunity to respond, and without substantiating evidence. This consistent pattern of constitutional violation, applied across multiple employees by the

14

*Lewis v. Bedford City School District, et al.*

District's final policymaking authority, establishes a well-settled custom sufficient to trigger independent Monell liability.

44. Board members who had knowledge of the deprivations suffered by Ms. Lewis beginning in September 2025, and who took no corrective action during the months in which the pattern expanded to include Mr. Walker and Dr. Threat, bear individual § 1983 liability for deliberate indifference constituting tacit authorization of Superintendent Johnson's conduct.

## COUNT IV

*Breach of Employment Contract*
*Against Defendant Bedford City School District*

45. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

46. Ms. Lewis's employment relationship with the District is governed by the terms of her employment contract, the District's adopted policies, and applicable Ohio law, including Ohio Revised Code § 3319.02. The District's imposition of indefinite administrative leave without written notice of charges, without adherence to the contractual and policy-based due process protections applicable to Ms. Lewis's position, without a defined resolution mechanism, and with the use of an impending contract deadline as leverage to secure an improper release, constitutes a material breach of Ms. Lewis's employment contract and the implied covenant of good faith and fair dealing.

47. As a direct and proximate result of this breach, Ms. Lewis has suffered economic damages including loss of professional opportunity, reputational harm, and contract-based protections, in amounts to be determined at trial.

## V. DAMAGES

15

*Lewis v. Bedford City School District, et al.*

48. As a direct and proximate result of Defendants' actions described herein, Plaintiff Khalisha A. Lewis has suffered and continues to suffer the following damages:

- Loss of income, back pay, and employment benefits from the date of her placement on administrative leave through the date of judgment;

- Damage to professional reputation and career trajectory, including reputational harm within the educational community in which Ms. Lewis holds Ohio educator licensure and has built an eight-year career as a building principal;

- Foreclosed career advancement opportunities and interference with Ms. Lewis's ability to seek comparable employment in the field of education, arising from the stigmatizing characterizations in the District's investigative report and the public nature of her removal;

- Severe emotional distress, anxiety, and dignitary harm caused by the prolonged, unresolved, and procedurally deficient nature of the District's conduct;

- Violation of constitutional rights under the Fourteenth Amendment, entitling Plaintiff to compensatory and punitive damages under 42 U.S.C. § 1983;

- Attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

- Such other damages as shall be proven at trial.

49. Punitive damages are independently warranted against Defendant Johnson in her individual capacity, and against each individual Board Defendant in their individual capacities. The conduct described herein, including the imposition of indefinite administrative leave without pre-deprivation process, the transmission of a coercive Last Chance Agreement conditioning reinstatement on the surrender of all federal and state civil rights claims, the use of an imminent contract deadline as a mechanism of structural coercion, and the deliberate indifference of the Board to a documented ongoing pattern of constitutional violation, reflects malice, deliberate indifference, and reckless disregard for clearly established federal rights sufficient to support punitive damages under *Smith v. Wade*, 461 U.S. 30 (1983).

16

*Lewis v. Bedford City School District, et al.*

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Khalisha A. Lewis respectfully prays that this Court enter judgment in her favor and against all Defendants, and specifically requests the following relief:

- A declaratory judgment that Defendants violated Plaintiff's rights under the Fourteenth Amendment, the First Amendment, and applicable federal and state law;

- Preliminary and permanent injunctive relief, including immediate reinstatement to her position as Head Principal of Bedford High School without conditions, without the LCA, and without any notation of the events of September 2025 in her personnel file;

- Compensatory damages for economic loss, reputational harm, emotional distress, and the deprivation of constitutional rights, in amounts to be determined at trial;

- Punitive damages against Defendants Johnson and the individual Board members in their personal capacities, pursuant to *Smith v. Wade*, 461 U.S. 30 (1983), for conduct that was willful, deliberate, and in reckless disregard of Plaintiff's clearly established constitutional rights;

- An order requiring expungement of all references to the September 2025 investigation from Plaintiff's personnel file and all related District records;

- An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and applicable law;

- Such other and further relief as this Court deems just and proper.

17

*Lewis v. Bedford City School District, et al.*

## JURY DEMAND

Plaintiff Khalisha A. Lewis hereby demands a trial by jury on all claims so triable pursuant to

Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**Karrie D. Howard, Esq., 0082858**
Howard Legal Services LLC
1414 S. Green Rd., Ste. 203 PMB 16
South Euclid, Ohio 44121
(330) 774-9198
khoward@howardlegalservices.com

Attorney for Plaintiff Khalisha A. Lewis